The Honorable Tana Lin

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

12273977 CANADA INC.,

Plaintiff,

v.

CS GLOBAL ENERGY US INC., f/k/a LAKE PARIME USA INC.,

Defendant.

CASE NO. 2:25-cv-01630-TL

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**NOTICE ON MOTION CALENDAR: DECEMBER 15, 2025**

**ORAL ARGUMENT REQUESTED**



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

## TABLE OF CONTENTS


INTRODUCTION AND RELIEF REQUESTED ........ 1

BACKGROUND ........ 2

A. Factual Background ........ 2

1. Cryptocurrency Mining ........ 2

2. Defendant Agrees to Host Plaintiff's Crypto Mining Rigs in Defendant's Facility ........ 3

a. The Co-location Agreement ........ 3

b. Defendant Requires Plaintiff to Pre-Pay for Power and Credits Later Invoices Based on Actual Power Usage ........ 4

c. Plaintiff Pays Defendant's Invoices. ........ 6

3. The Parties Agree to Terminate the Co-location Agreement Early and Sign the Termination Agreement ........ 7

a. Defendant Agrees to Return Plaintiff's Security Deposit and Pay a Net $395,000 For Early Termination of the Agreement ........ 7

b. Defendant Breaches the Termination Agreement ........ 9

B. Procedural History ........ 10

ARGUMENT ........ 11

I. SUMMARY JUDGMENT IS PROPER WHEN, AS HERE, THERE CAN BE NO GENUINE DISPUTE AS TO ANY MATERIAL FACT ........ 11

II. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT AND UNJUST ENRICHMENT CLAIMS ........ 12

A. Defendant Breached the Agreements ........ 12

B. Alternatively, Defendant is Liable for Unjust Enrichment ........ 15

III. THE COURT SHOULD AWARD PLAINTIFF POSSESSION OF THE POWER CABLES ........ 16




MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

**IV. Defendant's Defenses Fail as a Matter of Law ......................................17**

**CONCLUSION ........................................................................................................20**



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Research Capital LLC v. H NU Photonics LLC*,
C22-607-MLP, 2023 WL 1766220 (W.D. Wash. 2023) ....................16

*Bailie Comms. Ltd. v. Trend Bus. Sys., Inc.*,
810 P.2d 12 (Wash. App. 1991)....................15

*Barnes v. Arden Mayfair, Inc.*,
759 F.2d 676 (9th Cir. 1985) ....................11

*Blocktree Props., LLC v. Pub. Util. Dist. No. 2*,
447 F. Supp. 3d 1030 (E.D. Wash. 2020)....................2

*BMO Harris Bank N.A. v. Miller Transp. LLC*,
C20-148 RSM, 2021 WL 1338478 (W.D. Wash. 2021) ....................16

*Burke Digital LLC v. LLIA Encore, LLC*,
2:25-CV-00592-RAJ, 2025 WL 2675787 (W.D. Wash. 2025)....................16

*BVB Express, LLC v. Straight Logistics, Inc.*,
2:24-CV-00848-RAJ, 2024 WL 4371550 (W.D. Wash. 2024)....................16

*Citizens Bank of Md. v. Strumpf*,
516 U.S. 16 (1995)....................12, 13

*Cooper v. Whatcom Cnty.*,
650 F. Supp. 3d 1144 (W.D. Wash. 2023)....................11, 12

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
771 F.3d 1119 (9th Cir. 2014) ....................11

*Fujifilm Sonosite, Inc. v. Imaging Specialists Grp., LLC*,
2:13-CV-983 RSM, 2014 WL 2930976 (W.D. Wash. 2014)....................12

*GS Holistic LLC v. Vape Savvy LLC*,
C23-0373JLR, 2024 WL 1701965 (W.D. Wash. 2024) ....................18

*Inteum Co., LLC v Nat'l Univ. of Singapore*,
C17-1252-JCC, 2019 WL 1282014 (W.D. Wash. 2019)....................14

*Kaiser v. CSL Plasma Inc.*,
240 F. Supp. 3d 1129 (W.D. Wash. 2017)....................18



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

*Keenan v. Allan*,
91 F.3d 1275 (9th Cir. 1996) ....................................................................................11

*Kingston v Int'l Bus. Machs. Corp.*,
C19-1488 MJP, 2021 WL 2662219 (W.D. Wash. 2021)........................................................15

*Lehrer v. State, Dept. of Soc. & Health Servs.*
5 P.3d 722 (Wash. Ct. App. 2000)..........................................................................................12

*Li v. Northeastern Univ.*,
2:22-CV-00444-LK, 2023 WL 3722227 (W.D. Wash. 2023)...................................................18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)................................................................................................................11

*Mutuelles Unies v Kroll & Linstrom*,
957 F.2d 707 (9th Cir. 1992) ....................................................................................................15

*Opico v Convergent Outsourcing, Inc.*,
18-CV-1579-RSL, 2019 WL 1755312 (W.D. Wash. 2019) .....................................................17

*Smith v. Bank of N.Y. Mellon*,
C19-0538-JCC, 2019 WL 3428744 (W.D. Wash. 2019)..........................................................17

*Smith v. Clover Park Sch. Dist. No. 400*,
3:21-CV-05767, 2022 WL 17740327 (W.D. Wash. 2022)........................................................17

*Taber v Cascade Designs, Inc.*,
706 F. Supp. 3d 1144 (W.D. Wash. 2023)...................................................................................11

*Tollefson v. Aurora Fin. Group, Inc.*,
C20-0297JLR, 2021 WL 462689 (W.D. Wash. 2021) ...............................................................19

*Estate of Torres by and through Banda v Kennewick School Dist. No. 17*,
4:19-CV-05038-MKD, 2024 WL 1142864 (E.D. Wash. 2024) ...............................................18

*W W Leasing Unlimited v. Torok Expl., Min. & Const. Co.*,
575 F.2d 1259 (9th Cir. 1978) ..................................................................................................14

*Young v. Young*,
191 P.3d 1258 (Wash. 2008).......................................................................................................15

**Statutes**

RCW 4.56.110 ..........................................................................................................15, 16

RCW 19.52.010(1)...........................................................................................................16

RCW 19.52.020 ........................................................................................................15, 16



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

**Other Authorities**

Fed. R. Civ. P. 56(a) ....................................................................................................11
Fed. R. Civ. P. 56(e) ....................................................................................................11



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

**INTRODUCTION AND RELIEF REQUESTED**

This is an open-and-shut case. Pursuant to a Co-location Agreement signed by the parties, Plaintiff 12273977 Canada Inc. ("Plaintiff") paid Defendant CS Global Energy US, Inc., f/k/a Lake Parime USA Inc. ("Defendant") millions of dollars from June 2022 through May 2025 to host Plaintiff's cryptocurrency mining machines in Defendant's data center. In or around mid-2025, Defendant sought to terminate the parties' agreement early so that Defendant could make more money repurposing the facility into an artificial intelligence data center. Plaintiff agreed to terminate early. The parties signed a termination agreement under which Defendant would return Plaintiff's security deposit and refund Plaintiff for future services it had prepaid for but would not receive.

Yet, after Plaintiff vacated the data center, Defendant refused to return Plaintiff's security deposit, its power cables, or prepayments. These facts cannot reasonably be disputed. Thus, Plaintiff seeks summary judgment and entry of judgment awarding Plaintiff damages of $2,692,087.53, plus prejudgment interest, and possession of the power cables.

Specifically, Plaintiff is entitled to summary judgment on its claim that Defendant breached the parties' agreements by failing to: (1) return Plaintiff's security deposit of $1,633,824; (2) pay a net service fee credit of $395,000; and (3) repay Plaintiff (a) $558,000 it pre-paid for June 2025 services it never received and (b) $105,263.53, which is the amount by which Plaintiff's prepayment for May 2025 exceeds what Plaintiff actually owes for that month.

If there is any question about Defendant's contractual obligations – and there should not be – Plaintiff is also entitled to summary judgment on its unjust enrichment claim. Plaintiff paid Defendant a substantial security deposit and made very early and very large prepayments (essentially short-term interest-free loans) for services, some of which Plaintiff never received.



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

Payment records prove that Defendant knowingly received these amounts and still possesses them, unjustly enriching itself at Plaintiff's expense.

Finally, Plaintiff is entitled to summary judgment on its replevin claim, which seeks return of Plaintiff's industrial-grade power cables that connected Plaintiff's machines to the data center. Those cables belong to Plaintiff, but Defendant refuses to return them. The Court should award possession of the cables to Plaintiff on its replevin claim.

## BACKGROUND

### A. Factual Background

#### 1. Cryptocurrency Mining

"Cryptocurrencies" or "crypto" are digital assets that are securely encrypted through blockchain, "the technology through which cryptocurrency transactions are verified and tracked across networks of computers, working as a digital ledger." *Blocktree Props., LLC v. Pub. Util. Dist. No. 2,* 447 F. Supp. 3d 1030, 1034 (E.D. Wash. 2020).

For cryptocurrencies such as bitcoin and its variants that operate on a proof-of-work consensus mechanism, transactions are verified through high-powered computers, commonly called mining "rigs," that use computational power to solve complex cryptographic puzzles. Declaration of Lars Jorgensen ("Jorgensen Decl.") ¶ 5. Solving those puzzles validates cryptocurrency transactions, records them in the blockchain, and generates new crypto as a reward to the mining rig's owners – this process is called "mining" crypto. *Id.*

To mine cryptocurrencies, rigs need an internet connection and electricity. *Id.* ¶ 6. Thus, the amount of available power, internet speed, and the cost of these services are key considerations. *Id.* To mine crypto profitably at scale, rig owners may pay to host or "co-locate" fleets of their rigs in data centers with access to fast internet and cheap electricity. *Id.*



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

Another important consideration for a rig owner is its entitlement to data center "uptime," *i.e.*, the percentage of time that the mining rigs are connected and operational. *Id.* ¶ 7. For example, a fleet of mining rigs that loses power for six hours will have 75% uptime that day (all else being equal). *Id.*

**2. Defendant Agrees to Host Plaintiff's Crypto Mining Rigs in Defendant's Facility**

*a. The Co-location Agreement*

Plaintiff is a Canadian blockchain company that owns and manages scalable blockchain infrastructure, including mining rigs. *Id.* ¶ 8. Defendant is a Washington corporation that operates a data center in Coshocton, Ohio (the "Facility"). *Id.* ¶ 9. The Facility offers power, internet, labor, and space where cryptocurrency rig owners can store their rigs to mine crypto. *Id.*

In June 2022, Plaintiff signed a Co-location Agreement with Defendant, then named Lake Parime USA Inc., to host Plaintiff's mining rigs in the Facility. *Id.* ¶ 10, Ex. A. That agreement required Defendant to host Plaintiff's mining rigs and supply them with electricity and internet access. Jorgensen Decl. ¶ 11, Ex. A § 2.2. For its part, Plaintiff agreed to pay a security deposit and pay for electricity, *id.* ¶ 11, Ex. A § 5, and would receive crypto from the rigs. The parties soon amended their initial agreement (as amended, the "Co-location Agreement") to reduce the security deposit to $1,633,824 and change the electricity price to $0.0775 per kilowatt-hour (kWh). Jorgensen Decl. ¶ 13, Ex. C.

Under the Co-location Agreement, Plaintiff had "exclusive access to ten (10) Megawatts of electrical power" but was responsible for paying for at least 90% of that (*i.e.*, 9 MW) provided the rigs operated at 97% uptime. *Id.* ¶ 17, Ex. C §§ 1, 2. If the rigs operated at less than 97% uptime, Plaintiff would be charged based on actual power usage. *Id.* ¶ 17, Ex. C § 2.



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

The Co-location Agreement had an initial five-year term. *Id.* ¶ 18, Ex. A §§ 1.1, 4.1-4.3. The parties' payment obligations survive termination of the agreement, which states that, in the event of a termination, "all amounts owing to a Party will be settled by the other Party, including the return of the Security Deposit, if applicable." *Id.* Ex. A § 4.4.

*b. Defendant Requires Plaintiff to Pre-Pay for Power and Credits Later Invoices Based on Actual Power Usage*

Plaintiff paid the $1,686,528 security deposit due under the original Co-location Agreement on June 17, 2022. Jorgensen Decl. ¶ 12, Ex. B. After the parties amended that agreement, Defendant refunded the $52,704 between the original ($1,686,528) and amended ($1,633,824) security deposit amounts, by wire transfer to Plaintiff on July 15, 2022. *Id.* ¶ 14, Ex. C § 3. Plaintiff also purchased industrial-grade power cables through Defendant that connected Plaintiff's rigs to the Facility's power supply. *Id.* ¶ 15, Ex. D. The power cables cost Plaintiff $43,214.40, with $20,063.95 for delivery, for a total purchase price of $63,278.35. *Id.* Exs. B, D.

Plaintiff installed its mining rigs in the Facility, connected them with Plaintiff's power cables, and the rigs began mining crypto. *Id.* ¶ 16. As Plaintiff's rigs mined crypto, Defendant insisted on a three-step invoicing practice for payment of Hosting Fees.[1]

*First*, for a given month, Defendant would invoice Plaintiff for hosting services one to two months in advance (the "Prepaid Fee").[2] Declaration of Eoin Fitzpatrick ("Fitzpatrick Decl.") ¶ 5.a. The Prepaid Fee was calculated assuming that Plaintiff's rigs used 10 MW (*i.e.*, 10,000 kW) for 24 hours a day for a month at $0.0775/kWh. *Id.* So, for a 30-day month, the Prepaid Fee was $558,000 (*i.e.*, $0.0775 * (24 hours * 30 days * 10,000 kW)). *Id.* For a 31-day month, it was

---

[1] Any capitalized terms not defined in this brief have the same meanings set forth in the Co-location Agreement.

[2] Beginning in 2024, Defendant started to demand partial prepayments even further in advance. For instance, Defendant requested Plaintiff make a partial prepayment for January 2025 Hosting Fee in October 2024. Fitzpatrick Decl. ¶ 8. As an accommodation to Defendant, Plaintiff made those extraordinary prepayments for January, February, March, and April in 2025. *Id.*



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

$576,600 (same calculation with 31 days). *Id.* And for a standard February, it was $520,800 (same calculation but with 28 days). *Id.*

*Second*, Defendant would reconcile the Prepaid Fee against an estimated power usage calculated by Defendant to be 5,882,400 kWh at $0.0775/kWh, for a payment of $455,886 (the "Interim Fee"). *Id.* ¶ 5.b. The invoice reflecting this step would thus show a credit for the difference between the Prepaid Fee and the Interim Fee being applied to the next Prepaid Fee obligation. *Id.* This calculation would bring Plaintiff's net payment for the just-finished usage month to $455,886, and the credit would be applied to any Prepaid Fee also owing on the particular invoice. *Id.*

*Third*, and finally, the parties' obligations with respect to the at-issue month would settle once Defendant reconciled the Interim Fee for that month against either (a) the actual power usage of Plaintiff's mining rigs in that month, or (b) the greater of actual power usage or a minimum payment specified in the Co-location Agreement. *Id.* ¶ 5.c. Specifically, if Plaintiff's rigs had operated at 97% uptime in the month, Defendant would charge for the higher of either (x) Plaintiff's actual energy usage, or (y) 9 MW for a minimum payment of $502,200 for a 30-day month and of $518,940 for a 31-day month. *Id.* If the rigs had *not* achieved 97% uptime, Defendant would charge Plaintiff for actual energy usage. *Id.* As in the previous step, this calculation would result in either a credit or an amount owing. *Id.* This final reconciliation for the given month occurred after the end of that given month. *Id.*

These three steps would typically occur across multiple invoices or credit documents that Defendant issued to Plaintiff each month. *Id.* ¶ 6. The net consequence of Defendant's invoicing process was that Plaintiff effectively provided Defendant with early, short-term, interest-free loans that Defendant never paid back other than through credits against later payments. *Id.* ¶ 7. It was



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

thus a foregone conclusion that, whenever their relationship ended, Defendant would owe Plaintiff a refund for prepaid, unused services. *Id.*

*c. Plaintiff Pays Defendant's Invoices.*

Plaintiff paid all amounts owed to Defendant under the terms of the Co-location Agreement, including for services in May 2025 and a prepayment for June 2025. Fitzpatrick Decl. ¶ 9, Exs. A, D, E, F. But because of the Termination Agreement, discussed in detail below, invoices for services in those months never went through steps 2 or 3 of the invoicing process. *Id.* ¶ 9. Thus, Plaintiff never received credit for its payments above the amount of power it actually used in May and June 2025. *Id.* ¶ 9, Exs. D, F. (listing blockchain transaction entries showing Plaintiff's payments of amounts for these months).

Specifically, on March 24, 2025, Defendant issued invoice SI-222 to Plaintiff, which included the May 2025 Prepaid Fee of $576,600.[3] Fitzpatrick Decl. ¶ 10, Ex. A. Net of prepayments and reconciliations,[4] the net amount due for the upcoming May 2025 under SI-222 was $371,242. *Id*. ¶ 12, Exs. A-D. On March 26, 2025, Plaintiff made a payment resolving that invoice SI-222 in the amount of $371,242 in USDC, a digital dollar backed by cash. *Id*. Ex. D.

On April 28, 2025, Defendant issued SI-229, which included the prepayment for the June 2025 Hosting Fee of $558,000.[5] *Id*. ¶ 13, Ex. E. Net of prepayments and reconciliations, the net amount due for June 2025 under SI-229 was $455,886. *Id.* Plaintiff paid that amount due on April 30, 2025, in USDC to Defendant's Ethereum wallet, thus resolving invoice SI-229. *Id*. ¶ 14,

---

[3] Invoice SI-222 also lists an Interim Fee for March Hosting Fee of $455,886, and a credit in the amount of $576,600, for the prepayment Plaintiff made for the month of March. Fitzpatrick Decl. ¶ 10, Ex. A.

[4] Two Sales Credit Notes (SCN-26 of $6,914 and SCN-27 of $77,730) were applied to SI-222. Fitzpatrick Decl. ¶ 11, Exs. B, C.

[5] Invoice SI-229 also lists an Interim Fee for April Hosting Fee of $455,886, and a credit in the amount of $558,000, for the prepayment Plaintiff made for the month of April. Fitzpatrick Decl. ¶ 13, Ex. E.



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

Ex. F. Nicolas Weiling Laursen, Defendant's Chief of Staff, confirmed receipt of the payment. *Id*. ¶ 15, Ex. G.

On May 1, 2025, after Defendant confirmed the actual energy consumption in April, Defendant sent an invoice for the step 3 reconciliation (discussed above) relating to April (SI-230). *Id*. ¶ 16, Ex. H.[6] Plaintiff paid that invoice SI-230 on May 2, 2025. Fitzpatrick Decl. ¶ 17, Ex. I. After SI-230, Defendant never issued another invoice or credit. *Id.* ¶ 18. Defendant thus failed to reconcile Plaintiff's $576,600 total prepayment for May 2025 against what Plaintiff owed for power usage that month. *Id.*

Plaintiff calculates the amount owed as follows: Plaintiff's mining rigs consumed 6,081,760.95 kWh of electricity in May 2025. Declaration of Dorottya Posfay ("Posfay Decl.") ¶¶ 10-12, Ex A. At $0.0775/kWh, Plaintiff used only $471,336.47 worth of electricity that month. *Id.* ¶ 10. But Plaintiff had prepaid $576,600. *Id.* ¶ 12. Plaintiff was only required to pay for actual energy usage for May 2025. *Id*. ¶ 11. Thus, Defendant owes Plaintiff $105,263.53 for May 2025 hosting services. *Id.* ¶ 12. Defendant also still holds Plaintiff's $558,000 prepayment for June 2025, which was never refunded. *Id.* ¶ 16; Fitzpatrick Decl. Exs. E, F.

### 3. The Parties Agree to Terminate the Co-location Agreement Early and Sign the Termination Agreement

#### *a. Defendant Agrees to Return Plaintiff's Security Deposit and Pay a Net $395,000 For Early Termination of the Agreement*

In or around mid-2025, Defendant communicated to Plaintiff that Defendant wanted to terminate the Co-location Agreement early so that Defendant could repurpose the Facility as an artificial intelligence data center. Jorgensen Decl. ¶ 21. Plaintiff agreed. *Id.* On May 2, 2025,

[6] Invoice SI-230 was for a total of $46,610.31, which comprises: (1) the 90% minimum energy consumption of 6,480,000 kWh, at $0.0775/kWh, which equates to a total cost of $502,200.00; (2) an additional miscellaneous fee of $275; (3) a credit in the amount of $455,886, for the Interim Fee Plaintiff paid for in accordance with SI-229, and (4) $21.31 in taxes. Fitzpatrick Decl. ¶ 16, Ex. H.



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

the parties signed a Termination Agreement (together with the Co-location Agreement, the "Agreements"). *Id.* ¶ 22, Ex. E. Defendant's CEO, Jesper Øhlenschlager, executed the Termination Agreement on behalf of "CS Global Energy US Inc. (Formerly Lake Parime USA, Inc.)." *Id.*[7]

The Termination Agreement states that, by May 1, 2025, Plaintiff "will settle invoice number SI-229 for US$455,886." *Id.* ¶ 23, Ex. E § 2(a). Plaintiff had already done that with its April 30, 2025 payment,[8] and Defendant's representative again confirmed receipt of that payment. Fitzpatrick Decl. ¶ 15, Exs. E, F, G. As discussed above, Plaintiff had already made a payment for June 2025 in the amount of $558,000 in accordance with invoice SI-229 but received no services in June 2025. *Id.* ¶ 19. Plaintiff also agreed by June 1, 2025 to "commence . . . the de-racking, packaging[,] and removal of all its Mining Equipment, and any other equipment owned by [Plaintiff] . . . from the Installed Location," and to make an agreed payment of $105,000 to cover certain removal costs. Jorgensen Decl. ¶ 24, Ex. E. §§ 2(b), (e).

The Termination Agreement also required Defendant to return Plaintiff's security deposit, stating, "By June 1, 2025 [Defendant] shall return the Security Deposit to [Plaintiff], being US$1,633,824." *Id.* ¶ 25, Ex. E § 2(c). And "[i]n addition to the return of the Security Deposit, [Plaintiff] will be provided a credit of US$500,000," which "will be offset against any Hosting Fee or Additional Services Fees amounts owing by [Plaintiff] under the [Co-location Agreement] and

[7] Defendant's Washington Secretary of State filings indicate that Lake Parime USA Inc. changed its name to Statar Mining US Inc. in February 2023, then changed its name again to CS Global Energy US Inc. in April 2023. Declaration of Chenjia Zhu ("Zhu Decl.") Exs. C, D. And although it appears that Lake Parime came under new ownership at some point after the parties entered the Co-location Agreement, Jorgensen Decl. ¶ 20, Defendant's annual reports filed with the Washington Secretary of State from 2023 through 2025 indicate that there have been no material changes in equity ownership during that time. *See* Zhu Decl. Exs. E, F, G. Thus, there can be no dispute that Defendant is the same entity, in all but name, that Plaintiff contracted with in 2022 and has dealt with since then.

[8] As explained above, Plaintiff's payment of $455,886 on SI-229 consisted of prepayment for June 2025 in the amount of $558,000, payment for April Interim Fee of $455,886, and a credit for April prepayment in the amount of $558,000. Fitzpatrick Decl. ¶ 13, Ex. E.



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

Management Agreement to the date all of the Mining Equipment is removed from the Installed Location, after true-up of any applicable credits. Any remaining balance of the Credit will be paid to [Plaintiff] as set forth in Section 2(b) of this termination agreement within ten (10) days thereafter." *Id.* § 2(d). There are no Hosting Fee or Additional Service Fees outstanding and owed by Plaintiff. Jorgensen Decl. ¶ 26. The only amounts due and owing are the reconciliations for the payments Plaintiff made for May and June 2025 hosting. *Id.*

*b. Defendant Breaches the Termination Agreement*

On June 2, 2025, having not received the repayment of its security deposit, Plaintiff reminded Defendant of its obligation under the Termination Agreement and requested Defendant's payment. *Id.* ¶ 29. Defendant responded by demanding as a condition of payment that Plaintiff submit certain documentation and authorizations not required by the parties' Agreements and that Defendant had never required when invoicing Plaintiff. *Id.* ¶ 29, Ex. F. Plaintiff nonetheless provided the requested documentation. *Id.* ¶ 30, Ex. F.

After entering the Termination Agreement, Plaintiff removed its mining equipment from the Facility. *Id.* ¶ 31. Despite Plaintiff's ownership of the power cables, Defendant blocked their removal from the Facility. *Id.* ¶ 32.

By letter dated June 19, 2025, Plaintiff confirmed to Defendant that Plaintiff had fulfilled its obligations under the Termination Agreement, and advised that Plaintiff's security deposit, refund of the June 2025 Hosting Fee prepayment, and the agreed-upon exit payments (net $395,000) remained due and owing. *Id.* ¶ 35, Ex. G. Plaintiff also requested that Defendant true up its May 2025 prepayment (that Plaintiff made in March 2025 on invoice SI-222) and return Plaintiff's power cables. *Id.*; Fitzpatrick Decl. Ex. A.



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

Defendant ignored that letter. Jorgensen Decl. ¶ 36. Plaintiff contacted Defendant again, by letter dated June 27, 2025, advising Defendant that it had breached the Termination Agreement and again demanding return of Plaintiff's money and power cables. *Id.* ¶ 36, Ex. H.

Defendant did not return Plaintiff's security deposit. Jorgensen Decl. ¶ 37. Nor did it ever pay Plaintiff the $395,000 owed under the Termination Agreement (*i.e.*, the $500,000 credit to Plaintiff under the Termination Agreement net of the $105,000 exit payment to Defendant). *Id.* Defendant is also still withholding Plaintiff's $105,263.53 overpayment for May 2025 hosting services, and Plaintiff's entire $558,000 prepayment for non-existent June 2025 hosting services. *Id.* ¶ 38; Posfay Decl. ¶ 16; Fitzpatrick Decl. ¶ 19. Finally, Defendant still refuses to return Plaintiff's power cables, initially claiming that the cables belonged to Defendant. Jorgensen Decl. ¶ 39; Zhu Decl. Ex. B.

### B. Procedural History

On August 26, 2025, Plaintiff filed this lawsuit for: (1) breach of contract; (2) unjust enrichment; (3) replevin, and in the alternative; (4) conversion; and (5) trespass to chattels. (Dkt. No. 1.) Defendant answered on October 6, 2025, raising various conclusory and boilerplate affirmative defenses. (Dkt. No. 20.)

On October 14, 2025, the parties held their Rule 26(f) conference. Zhu Decl. ¶ 3. During that conference and in accordance with the Court's Chambers' Procedures, Plaintiff's counsel stated that it intended to move for summary judgment and Defendant's counsel stated that it would oppose, which defense counsel reiterated by email on November 10, 2025. *Id.* ¶ 4, Ex. A. In the parties' Joint Status Report, filed on November 14, 2025, Defendant changed its story on the power cables. Instead of claiming that it owned them, Defendant now faulted *Plaintiff* for not



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

picking them up, even though Defendant had refused to let Plaintiff do so. Defendant also claimed that Plaintiff had never paid the security deposit. (Dkt. No. 24 ¶ (1)(B)(1)-(2).)

## ARGUMENT

### I. SUMMARY JUDGMENT IS PROPER WHEN, AS HERE, THERE CAN BE NO GENUINE DISPUTE AS TO ANY MATERIAL FACT

Summary judgment is proper if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). The non-movant must "identify with reasonable particularity the evidence that precludes summary judgment," *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996), and is entitled to have "only *reasonable* inferences" drawn in its favor. *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680 (9th Cir. 1985) (emphasis in original).

Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). Once that showing is made, "the burden shifts to the non-movant to show more than the mere existence of a scintilla of evidence in support of its case – the party must show sufficient evidence that a jury could reasonably find for the non-movant." *Taber v Cascade Designs, Inc.*, 706 F. Supp. 3d 1144, 1153 (W.D. Wash. 2023). This requires the non-movant to "do more than simply show that there is some metaphysical doubt as to the material facts . . . it must come forward with specific facts showing that there is a genuine issue for trial." *Cooper v. Whatcom Cnty.*, 650 F. Supp. 3d 1144, 1156 (W.D. Wash. 2023). "The Court will enter summary judgment against a party who fails to make a showing sufficient to establish the existence



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (cleaned up).

## II. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT AND UNJUST ENRICHMENT CLAIMS

### A. Defendant Breached the Agreements

There can be no genuine dispute that Defendant breached the Agreements by refusing to return Plaintiff's security deposit, pay an agreed service credit under the Termination Agreement, and refund amounts paid for services Plaintiff never received. A claim for breach of contract under Washington law requires a valid contract, a breach, and resulting damages. *Lehrer v. State*, *Dept. of Soc. & Health Servs.*, 5 P.3d 722, 727 (Wash. Ct. App. 2000); *Fujifilm Sonosite, Inc. v. Imaging Specialists Grp., LLC*, 2:13-CV-983 RSM, 2014 WL 2930976, at *5, *8 (W.D. Wash. 2014) (granting summary judgment where undisputed facts showed that the defendant breached valid contracts by failing to make timely payments).

Defendant cannot dispute the validity of the parties' Agreements. It signed the Co-location Agreement and the Termination Agreement, performed the Co-location Agreement until the Termination Agreement was signed, and accepted Plaintiff's performance of the Termination Agreement before breaching the Agreements.

Plaintiff performed its obligations under the Agreements. It paid all amounts invoiced under the Co-location Agreement, Fitzpatrick Decl. ¶ 9, Exs. D, F, G, I; removed its rigs and settled all required invoices under the Termination Agreement, Jorgensen Decl. ¶¶ 23, 31; and tendered payment to Defendant of the $105,000 exit fee by demanding that Defendant net this amount out of the monies owed to Plaintiff. *Id.* ¶ 27.[9]

[9] Nothing requires Plaintiff to tender an additional $105,000 to a party that owes it more than that. *See Citizens Bank of Md. v. Strumpf,* 516 U.S. 16, 18 (1995) ("The right of setoff (also called 'offset') allows entities that owe each other



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

Defendant indisputably breached its contractual obligations under the Agreements in three ways, causing Plaintiff damages.

*First*, the Termination Agreement requires Defendant to pay Plaintiff its $1,633,824 security deposit by June 1, 2025. Jorgensen Decl. ¶ 25, Ex. E § 2(c). Defendant never did so. *Id.* ¶ 37.

*Second*, the Termination Agreement requires Defendant to issue Plaintiff a $500,000 credit because the parties' relationship was terminating. Jorgensen Decl. Ex. E § 2(d). Defendant was required to make this payment that was netted against a $105,000 exit payment by Plaintiff, for a total of $395,000 owing to Plaintiff. *Id.* ¶ 37, Ex. E §§ 2(d), 2(e). Defendant never made this payment. *Id.* ¶ 37.

*Third*, Defendant has failed to refund amounts that Plaintiff pre-paid (*i.e.*, $558,000 for June 2025) or overpaid (*i.e.*, $105,263.53 for the difference between its $576,600 prepayment for May 2025 and the $471,336.47 it owed based on actual service that month). *Id.* ¶ 38; Posfay Decl. ¶ 12. The Termination Agreement states that "the provisions of the Amended Colocation Agreement . . . intended to survive subsequent to a termination . . . shall continue to be operative." Jorgensen Decl. Ex. E, § 1(b). And the Co-location Agreement specifies that in the event of a termination, "all amounts owing to a Party will be settled by the other Party, including the return of the Security Deposit, if applicable." *Id*. Ex. A, § 4.4. Further, under Section 2(d) of the Termination Agreement, Plaintiff is entitled to a credit of US$500,000, which "will be offset against any Hosting Fee or Additional Services Fees amounts owing by [Plaintiff] under the [Co-location Agreement] and Management Agreement to the date all of the Mining Equipment is removed from the Installed Location, after true-up of any applicable credits." *Id*. ¶ 25, Ex. E

money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A.") (internal quotation marks omitted).



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

§ 2(d). But there were no Hosting Fee or Additional Service Fees outstanding and owing by Plaintiff. *Id.* ¶ 26. The only amounts owing were – and continue to be – the reconciliation for May and refund for June 2025, which Defendant owes Plaintiff. *Id.*

Finally, Plaintiff suffered damages caused by Defendant's breaches. Awarding damages on summary judgment is proper where, as here, a party's damages are calculable to a mathematical certainty based on the plain text of a valid agreement and other evidence in record. *W W Leasing Unlimited v. Torok Expl., Min. & Const. Co.*, 575 F.2d 1259, 1261 (9th Cir. 1978) (suggesting that damages can be determined as a matter of law based on contractually specified formula); *Inteum Co., LLC v Nat'l Univ. of Singapore*, C17-1252-JCC, 2019 WL 1282014, at *2 (W.D. Wash. 2019) ("Although damages need not be precisely shown, damages must be supported by competent evidence in the record. To be competent, the evidence or proof of damages must be established by a reasonable basis and must not subject the trier of fact to mere speculation or conjecture.") (internal quotations and citation omitted).

Here, the Termination Agreement requires the return of Plaintiff's security deposit in the amount of $1,633,824. Jorgensen Decl. ¶ 25, Ex. E § 2(c). It also requires Defendant to pay Plaintiff a $500,000 termination credit, *inclusive of* any applicable "true-up" (*i.e.*, for amounts Plaintiff prepaid in May and June 2025), and less the agreed-to $105,000 exit fee. *Id.* Ex. E §§ 2(d), 2(e). As discussed above, the only amounts due and owing are the reconciliation for May and June 2025, which Defendant owes Plaintiff. *Id.* ¶ 26. Thus, under the plain text of the Termination Agreement, there would be no offset to the $500,000 credit (other than netting out Plaintiff's agreed exit payment of $105,000). *Id.* ¶ 28.

In addition to sums Defendant owes Plaintiff under the text of the Termination Agreement, Defendant also owes Plaintiff for May and June 2025 hosting fee overpayments. *Id.* ¶ 38. Those



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

amounts are readily quantifiable by subtracting the costs of power that Plaintiff used in May 2025 (6,081,760.95 kWh) and June 2025 (zero kWh), from the prepayments Plaintiff made for those months ($576,600 and $558,000 respectively). Posfay Decl. ¶¶ 12, 16. The math is as follows: ($576,600 – ($0.0775 * (6,081,760.95 kWh))) + ($558,000 – ($0.0775 * 0 kWh)) = $663,263.53. The final number consists of $105,263.53 in credit due for May 2025 hosting and a $558,000 refund of amounts paid for non-existent June 2025 hosting. *Id.* ¶¶ 12, 16.

Accordingly, the Court should enter judgment awarding damages totaling $2,692,087.53, (*i.e.*, $1,633,824 + $395,000 + $105,263.53 + $558,000) plus pre-judgment interest starting from the date of each breach, which is no later than June 30, 2025 for all breaches, at the rate of 12% per annum under Washington law.[10] RCW 4.56.110(6); RCW 19.52.020(1).

**B. Alternatively, Defendant is Liable for Unjust Enrichment**

Even if Defendant argues that it is not bound by the Termination Agreement or that its true-up obligations are not part of the Agreements, Defendant's withholding of Plaintiff's money constitutes unjust enrichment. To prove unjust enrichment, a plaintiff must show a benefit conferred upon a defendant, who appreciates or knows of the benefit, and who accepts or retains it under circumstances that make doing so inequitable. *Bailie Comms. Ltd. v. Trend Bus. Sys., Inc.*, 810 P.2d 12, 18 (Wash. App. 1991); *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008).

Here, Defendant is holding $1,633,824 of security deposit that belongs to Plaintiff. Plaintiff also prepaid $576,600 for service in May 2025, in which Plaintiff incurred only a $471,336.47 expense for electricity, and prepaid $558,000 for June 2025 electricity that Plaintiff never received. Defendant is unfairly enriching itself by withholding money that belongs to

[10] *Mutuelles Unies v Kroll & Linstrom*, 957 F.2d 707, 714 (9th Cir. 1992) ("In diversity jurisdiction, state law governs all awards of pre-judgment interest."); *Kingston v Intl. Bus. Machs. Corp.*, C19-1488 MJP, 2021 WL 2662219, at *5 (W.D. Wash. 2021) ("State law governs the awards of prejudgment interest in this diversity action, so the Court considers Washington law as to prejudgment interest.").



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

Plaintiff. Thus, to the extent Defendant questions the validity of the parties' Agreements or their application, Defendant is nonetheless liable for unjust enrichment as a matter of law in the amount of $2,692,087.53, plus pre-judgment interest from June 30, 2025, at the rate of 12% per annum under Washington law.[11]

## III. THE COURT SHOULD AWARD PLAINTIFF POSSESSION OF THE POWER CABLES

Finally, awarding possession of the power cables is proper because they belong to Plaintiff, Defendant has refused to surrender them upon demand, and Defendant's possession of them is unlawful. *See Am. Research Capital LLC v. H NU Photonics LLC*, C22-607-MLP, 2023 WL 1766220, at *5, *9 (W.D. Wash. 2023) (granting summary judgment in plaintiff's favor on its replevin claim; there was no genuine dispute that plaintiff was entitled to possession of the property at issue).

An award of possession in replevin requires the plaintiff to show that: (1) it owns the property or is lawfully entitled to the possession of the property; (2) the defendant is wrongfully detaining the property; (3) the property has not been taken for a tax, assessment, or fine pursuant to a statute; and to identify (4) the approximate value of the property. *BMO Harris Bank N.A. v. Miller Transp. LLC*, C20-148 RSM, 2021 WL 1338478, at *2 (W.D. Wash. 2021) (granting relief on plaintiff's replevin claim by awarding an order of possession).

Plaintiff is entitled to summary judgment on its replevin claim. There can be no genuine dispute that Plaintiff owns its power cables and is lawfully entitled to possess them. Invoice SI-

[11] *Burke Digital LLC v. LLIA Encore, LLC*, 2:25-CV-00592-RAJ, 2025 WL 2675787, at *2 (W.D. Wash. 2025) ("Pursuant to Washington law, prejudgment interest is allowed in civil litigation at the statutory judgment interest rate, RCW 4.56.110, RCW 19.52.020, when a party to the litigation retains funds rightfully belonging to another and the amount of the funds at issue is liquidated, that is, the amount at issue can be calculated with precision and without reliance on opinion or discretion. The prejudgment interest rate in Washington is 12% per annum. RCW 19.52.010(1)." (cleaned up); *BVB Express, LLC v. Straight Logistics, Inc.*, 2:24-CV-00848-RAJ, 2024 WL 4371550, at *3 (W.D. Wash. 2024) (awarding prejudgment interest at 12% per annum because "the damages amount is readily determinable by references to the invoices.").



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

140 dated June 28, 2022, and the corresponding payment record dated June 29, 2022, both show that Plaintiff purchased the power cables for $63,278.35, thus owns them, and has demanded their return. Jorgensen Decl. ¶¶ 15, 35, 36, Exs. B, D, G, H.

Despite Plaintiff's repeated demands, Defendant has wrongfully detained the cables and refused to return them, even though Defendant has no basis to possess the cables now that Plaintiff's machines are no longer in the Facility mining crypto for Plaintiff. *Id.* ¶ 32. Rather than returning Plaintiff's power cables upon demand, Defendant first falsely claimed that it *owns* the power cables, Zhu Decl. Ex. B, but later claimed in the Joint Status Report filed with this Court that Plaintiff failed to retrieve its power cables – even though Defendant prevented Plaintiff from doing so. (Dkt. No. 24 ¶ (1)(B)(1).) The power cables also have not been taken for a tax, assessment, or fine pursuant to a statute. Fitzpatrick Decl. ¶ 22.

Because there is no genuine dispute as to Plaintiff's ownership of the power cables and Defendant's wrongful detention, summary judgment is proper on Plaintiff's replevin claim, and the Court should enter an order awarding possession of the cables to Plaintiff.

## IV. DEFENDANT'S DEFENSES FAIL AS A MATTER OF LAW

Defendant's boilerplate affirmative defenses fail as a matter of law and cannot defeat summary judgment. Affirmative defenses must at least provide "fair notice," which means the defendant must "state the nature and grounds of each affirmative defense . . . . The reiteration of a legal standard is not adequate to establish an affirmative defense." *Opico v Convergent Outsourcing, Inc.*, 18-CV-1579-RSL, 2019 WL 1755312, at *1, *3 (W.D. Wash. 2019). A party must support an affirmative defense with "at least some facts indicating the grounds on which the defense is based." *Smith v. Bank of N.Y. Mellon*, C19-0538-JCC, 2019 WL 3428744, at *1 (W.D. Wash. 2019) (citation omitted). Conclusory or boilerplate assertions are insufficient. *Smith*



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

*v. Clover Park Sch. Dist. No. 400*, 3:21-CV-05767, 2022 WL 17740327, at *13 (W.D. Wash. 2022) (dismissing conclusory statement as insufficient to constitute affirmative defense); *Estate of Torres by and through Banda v. Kennewick Sch. Dist. No. 17*, 4:19-CV-05038-MKD, 2024 WL 1142864, at *6 (E.D. Wash. 2024) ("Defendants offer a conclusory statement with no citation to the record or to caselaw . . . . Defendants have not met their obligation under Fed. R. Civ. P. 56(c) to cite to materials in the record precluding summary judgment."). Courts routinely reject boilerplate affirmative defenses at the summary judgment stage when they lack evidentiary support or are legally inapplicable. *See, e.g.*, *GS Holistic LLC v. Vape Savvy LLC*, C23-0373JLR, 2024 WL 1701965, at *5 (W.D. Wash. 2024) ("A defense that makes 'mere reference to a legal doctrine,' absent 'some fact or argument explaining the defense,' generally does not provide fair notice.") (citation omitted).

Here, Defendant's affirmative defenses are facially deficient and fail for at least the following reasons.

Defendant's Affirmative Defense 1 (failure to state a claim) fails because "[c]ourts in the Ninth Circuit have routinely held that 'failure to state a claim' is not a proper affirmative defense." *Kaiser v. CSL Plasma Inc.*, 240 F Supp 3d 1129, 1134 (W.D. Wash. 2017). This "affirmative" defense is thus invalid.

Defendant's Affirmative Defenses 2 (standing), 3 (nonpayment), 4 (wrong defendant), 5 (failure of condition precedent), 9 (waiver, estoppel, and ratification), and 11 (unclean hands) fail because Plaintiff's indisputable evidentiary showing in support of its summary judgment motion refutes those defenses. *See Li v. Northeastern Univ.*, 2:22-CV-00444-LK, 2023 WL 3722227, at *8 (W.D. Wash. 2023) ("Metaphysical doubt is insufficient, as are conclusory, non-specific allegations. Nor is it the Court's job to scour the record in search of a



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

genuine issue of triable fact; rather, the nonmoving party must identify with reasonable particularity the evidence that precludes summary judgment.") (internal citations omitted).

Defendant's Affirmative Defense 6 (setoff) fails, as Plaintiff's damage calculation already accounts for the setoff amounts.

Defendant's Affirmative Defense 7 (express contract) fails because Plaintiff seeks damages pursuant to unjust enrichment only in the alternative and to the extent its claims are not specifically covered by the Agreements.

Defendant's Affirmative Defense 8 (failure to join a required party) fails because Defendant caused Plaintiff's damages and as pleaded, and Defendant does not identify which party Plaintiff failed to join. *See Tollefson v. Aurora Fin. Group, Inc.*, C20-0297JLR, 2021 WL 462689, at *3 (W.D. Wash. 2021) (striking affirmative defense for failure to join necessary parties).

Defendant's Affirmative Defense 10 (failure to mitigate) fails because Plaintiff could not have avoided any of the harm Defendant caused. Defendant's vague suggestion that it could have fails to give Plaintiff fair notice of Defendant's supposed mitigation theory. *Id.* (striking affirmative defense of failure to mitigate damages).

Defendant's Affirmative Defense 12 (payment/satisfaction) fails because Plaintiff is only seeking amounts Defendant has *not* paid. Defendant can raise no genuine issues otherwise.

Therefore, each of Defendant's defenses fail as a matter of law and the Court should grant Plaintiff summary judgment.



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for summary judgment and enter judgment awarding (1) damages in the amount of $2,692,087.53 plus pre-judgment interest at 12% per annum from June 30, 2025, and (2) possession of its power cables.

Date: November 17, 2025

**McDERMOTT WILL & SCHULTE LLP**

I certify that this memorandum contains 6,218 words, in compliance with the Local Civil Rules.

By: *s/ Daniel-Charles v. Wolf*
Daniel-Charles V. Wolf, WSBA #48211

444 W. Lake St., Ste. #4000
Chicago, IL 60606-0029
(312) 372-2000
dcwolf@mwe.com
Andrew B. Kratenstein, *ADMITTED PRO HAC VICE*
Chenjia Zhu, *ADMITTED PRO HAC VICE*
One Vanderbilt Avenue
New York, NY 10017-3852
(212) 547-5400
akratenstein@mwe.com
chenjiazhu@mwe.com

*Attorneys for Plaintiff*

**CERTIFICATE OF CONFERRAL**

In accordance with Section II.D. of Judge Tana Lin's Standing Order for All Civil Cases, I certify that, on October 14, 2025, counsel for Plaintiff and counsel for Defendant held their Rule 26(f) conference over zoom, during which parties met and conferred regarding the relief requested in this motion. Counsel for Defendant indicated they would oppose the request for summary judgment, and the parties appeared to be at an impasse. On November 10, 2025, counsel for Plaintiff contacted counsel for Defendant again via email, and Defendant confirmed that their position has not changed, and that they would oppose the request for Summary Judgment.

November 17, 2025

/s/*Chenjia Zhu*
Chenjia Zhu



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000