The Honorable Tana Lin

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| 12273977 CANADA INC.,<br><br>Plaintiff,<br><br>v.<br><br>CS GLOBAL ENERGY US INC., f/k/a LAKE PARIME USA INC.,<br><br>Defendant. | CASE NO. 2:25-cv-01630-TL<br><br>**DECLARATION OF EOIN FITZPATRICK IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

I, Eoin Fitzpatrick, declare as follows:

1. I am over eighteen years old and if called to testify am competent to do so as follows based on personal knowledge.

2. I submit this Declaration in support of Plaintiff's Motion for Summary Judgment. Unless otherwise stated, the facts contained in this Declaration are based on my personal knowledge or my review of Plaintiff's records kept in the ordinary course of business. Plaintiff creates, receives, and maintains records, including the documents attached as exhibits to the Complaint and this Declaration, in the regular course of its business activities. All the documents were received, created, or otherwise generated at or near the dates reflected on such documents.



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

3. At all relevant times set forth in the Complaint, I served as the Finance Director of 12273977 Canada Inc., the plaintiff in the above-captioned case ("Plaintiff"). I am authorized to submit this Declaration on behalf of Plaintiff.

4. In my role as Finance Director, I handle the invoice processing, payment, and accounting functions of Plaintiff. Through those duties, I am familiar with invoicing and payment history between Plaintiff and Defendant in this case.

5. As Plaintiff's rigs mined cryptocurrencies, Defendant employed a three-step invoicing practice for payment of Hosting Fees:

a. *First*, for a given month of hosting services, Defendant would first invoice Plaintiff one to two months in advance (the "Prepaid Fee"). The Prepaid Fee was calculated assuming that Plaintiff's rigs used 10 MW (*i.e.*, 10,000 kW) for 24 hours a day for the whole month at $0.0775/kWh. So, for a 30-day month, the Prepaid Fee was $558,000 (*i.e.*, $0.0775 * (24 hours * 30 days * 10,000 kW)). For a 31-day month, it was $576,600 (same calculation with 31 days). And for a standard February, it was $520,800 (same but with 28 days).

b. *Second*, Defendant would reconcile the Prepaid Fee against an estimated power usage calculated by Defendant to be 5,882,400 kWh at $0.0775/kWh, for a payment of $455,886 ("Interim Fee"). The invoice reflecting this step would thus show a credit for the difference between the Prepaid Fee and the Interim Fee being applied to the next Prepaid Fee obligation. This calculation would bring Plaintiff's net payment for the given month to $455,886, and the credit would go toward any Prepaid Fee for a future month also owing on the particular invoice.

c. *Third*, and finally, the parties' obligations with respect to the given month would settle once Defendant reconciled the Interim Fee for Month against either (a) the actual



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

power usage of Plaintiff's mining rigs in the month, or (b) a minimum payment specified in the Co-location Agreement. The final reconciliation for the given month occurred after the end of that month. If Plaintiff's rigs had operated at 97% uptime in the month, Defendant would charge Plaintiff the higher of either (a) its actual energy usage, or (b) 9 MW at 97% uptime for a minimum payment of $502,200 for a 30-day month and of $518,940 for a 31-day month. If the rigs had *not* achieved 97% uptime, Defendant would charge Plaintiff for actual energy usage. As in the previous step, this calculation would result in either a credit or an amount owing.

6. These three steps would typically occur across multiple invoices or credit documents that Defendant periodically issued to Plaintiff.

7. The net consequence of Defendant's invoicing process was that Plaintiff effectively provided Defendant with early, short-term, interest-free loans that Defendant never paid back other than through credits against later payments. It was thus a foregone conclusion that, whenever their relationship ended, Defendant would owe Plaintiff a refund for prepaid, unused services.

8. Beginning in 2024, Defendant started to demand partial prepayments even further in advance. For instance, Defendant requested Plaintiff make a partial prepayment for January 2025 Hosting Fee in October 2024. As an accommodation to Defendant, Plaintiff made those extraordinary prepayments for January, February, March, and April in 2025.

9. Plaintiff paid all amounts owed to Defendant under the Co-location Agreement, including a prepayment for services in June 2025, which Plaintiff never received, and services in May 2025 that Plaintiff overpaid for because the May prepayment never went through steps 2 or 3 of the invoicing process such that Plaintiff never received credit for its payment beyond the power it actually used.



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

10. Specifically, on March 24, 2025, Defendant issued invoice SI-222 to Plaintiff, which included the prepayment charge for May 2025 Hosting Fee of $576,600. Invoice SI-222 also lists an Interim Fee for March Hosting Fee of $455,886, and a credit in the amount of $576,600, for the prepayment Plaintiff made for the month of March. Attached hereto as **Exhibit A** is a true and complete copy of Invoice SI-222.

11. Two Sales Credit Notes (SCN-26 of $6,914 and SCN-27 of $77,730) were applied to SI-222. These credits arose from past reconciliations. Attached hereto as **Exhibits B and C** are true and complete copies of SCN-26 and SCN-27, respectively.

12. Net of prepayments and reconciliations, the net amount due for May 2025 under Invoice SI-222 was $371,242. On March 26, 2025, Plaintiff made a payment under SI-222 in the amount of $371,242 in USDC, a digital dollar backed by cash.[1] Attached hereto as **Exhibit D** is a true and complete copy of Plaintiff's transaction entries from the Ethereum Blockchain, on which USDC transactions are recorded, on March 26, 2025, evidencing Plaintiff's payment of Invoice SI-222.

13. On April 28, 2025, Defendant issued SI-229, which included the prepayment for the June 2025 Hosting Fee of $558,000. Invoice SI-229 also lists an Interim Fee for April Hosting Fee of $455,886, and a credit in the amount of $558,000, for the prepayment Plaintiff made for the month of April. Attached hereto as **Exhibit E** is a true and complete copy of Invoice SI-229.

14. Net of prepayments and reconciliations, the net amount due for June 2025 under SI-229 was $455,886. Plaintiff paid the amount due under SI-229 on April 30, 2025, in USDC to Defendant's Ethereum wallet, thus resolving invoice SI-229. Attached hereto as **Exhibit F** is a

[1] Every time Plaintiff makes a payment in USDC, it does a test transfer of $2 first, which is followed by the remaining amount due under the invoice.



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

true and complete copy of Plaintiff's transaction entries from the Ethereum Blockchain on April 30, 2025, evidencing Plaintiff's payment of Invoice SI-229.

15. Nicolas Weiling Laursen, Chief of Staff for Defendant, confirmed receipt by email dated April 30, 2025. Attached hereto as **Exhibit G** is a true and complete copy of Nicolas Weiling Laursen's email confirming receipt of Plaintiff's payment.

16. On May 1, 2025, after Defendant confirmed the actual energy consumption in April, Defendant sent an invoice for the step 3 true-up relating to April (SI-230). Invoice SI-230 is for a total balance owing of $46,610.31, which comprises: (1) the 90% minimum energy consumption of 6,480,000 kWh, at $0.0775/kWh, based on the achievement of 97% uptime, which equates to a total cost of $502,200; (2) an additional miscellaneous fee of $275; (3) a credit in the amount of $455,886, for the Interim Fee Plaintiff paid for in accordance with SI-229, and (4) taxes in the amount of $21.31. Attached hereto as **Exhibit H** is a true and complete copy of Invoice SI-230.

17. Plaintiff paid for Invoice SI-230 on May 2, 2025. Attached hereto as **Exhibit I** is a true and complete copy of Plaintiff's transaction entries from the Ethereum Blockchain on May 2, 2025, evidencing Plaintiff's payment of Invoice SI-230.

18. After SI-230, Defendant never issued Plaintiff another invoice or credit. Defendant thus failed to reconcile Plaintiff's $576,600 total prepayment for May 2025 against what Plaintiff owed for power usage that month.

19. Therefore, Plaintiff prepaid $576,600 for May 2025 services and did not receive reconciliation from Defendant. Plaintiff also prepaid $558,000 for June 2025 but received no services for June 2025.



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

20. In addition, Invoice SI-140 and the corresponding payment record dated June 29, 2022, both show that Plaintiff purchased the power cables for a total purchase price of $63,278.35, and thus is the rightful owner of them.

21. However, despite Plaintiff's repeated demands, Defendant has wrongfully detained the cables and refused to return them.

22. The power cables have not been taken for a tax, assessment, or fine pursuant to a statute.



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 14, 2025, at: Cayman Islands.

Signed by:
Eoin Fitzpatrick
EC77DEA243BE4B6...

Eoin Fitzpatrick



MCDERMOTT WILL & SCHULTE
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000