THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

12273977 CANADA INC., a Canada corporation,

Plaintiff,

v.

CS GLOBAL ENERGY US INC., f/k/a LAKE PARIME USA INC., a Washington corporation

Defendant.

No. 2:25-cv-01630-TL

DECLARATION OF NICHOLAS WEILING LAURSEN IN SUPPORT OF DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Nicholas Weiling Laursen, of London, United Kingdom, states and declares as follows:

1. I am over 18 years of age.

2. I am Chief of Staff at CS Global Energy Ltd., which owns and operates facilities such as the one in Coshocton, Ohio. I have personal knowledge of the matters stated herein and I am competent to testify to these matters in opposition to Plaintiff's Motion for Summary Judgment.

3. At this time, it is unclear without further discovery whether Plaintiff's representatives actually (1) commenced removal of the Mining Equipment by June 1, 2025; (2) removed all of the Mining Equipment prior to June 20, 2025; and (3) what commercially reasonable efforts they did or did not undertake during that process.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**Background**

4. We did not originally contract with Plaintiff. Instead, our relationship to Plaintiff was a byproduct of a January 2023 U.K. administration proceeding (a corporate insolvency procedure), in which assets held by Lake Parime Ltd., including its subsidiary Lake Parime USA Inc., were purchased by Statar Mining Ltd.

5. A true and correct copy of the Business and Sale Agreement that was effectuated as part of this U.K. administration is attached hereto as **Exhibit A** (the "BASA").

6. At that time, Star Mining Ltd.'s subsidiary was Statar Mining US Inc.

7. In February of 2023, Lake Parime USA Inc. became Statar Mining US Inc., and that entity later in 2023 became CS Global Energy US Inc., the current Defendant.

8. Our relationship with Plaintiff is therefore relatively new, and comes out of a somewhat complicated origin.

**The "De-Racking" Procedure**

9. Although the parties signed the Termination Agreement, it is unclear whether and to what degree de-packing of certain Mining Equipment took place.

10. The parties contracted that "[o]n June 1, 2025, [Plaintiff] will commence, or cause to be commenced, the de-racking, packaging and removal of all of its Mining Equipment, and any other equipment owned by the [Plaintiff]that forms part of the HPC Operations, from the Installed Location. [Plaintiff] will use commercially reasonable efforts to have all of its equipment removed from the Installed Location by June 20, 2025." Termination Agreement 2(b). Whether Plaintiff actually "commenced" that work on June 1, completed it by June 20, and used commercially reasonable efforts in doing so, are all questions of fact that cannot be decided prior to discovery.

11. On May 5, 2025, Plaintiff's CEO, Lars Jorgensen, wrote to us that, "where I assume we have a common understanding is, that we or a representative of our can be present at any time



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

during the de-racking/boxing process." A true and correct copy of this email is attached hereto as **Exhibit B**.

12. I cannot speak further to exactly how or in what manner Plaintiff's representatives removed materials as was required under the Termination Agreement.

13. However, Plaintiff's CEO has previously acknowledged this obligation in writing.

14. On June 19, 2025, Lars Jorgensen acknowledged that the "items 2a and 2b listed" in the Termination Agreement were "the obligations of [Plaintiff] pursuant to the termination agreement."

15. A true and correct copy of this letter is attached hereto as **Exhibit C**.

**Power Cables**

16. Likewise, it was always our understanding that the power cables were purchased as assets we owned as part of the BASA.

17. Plaintiff claims they purchased the power cables for a total of $63,278.35 in June of 2022. They likewise claim the power cables were installed at the facility in or around October 2022.

18. Therefore, by the time we at purchased Lake Parime's assets in the U.K. administration, the power cables were already installed at the facility.

19. Schedule 5 of the BASA lists the Office Equipment that we were purchasing from Lake Parime. Included in that list were "Cables."

20. It has been our understanding that these Cables refer to the power cables at issue in this dispute.

21. Since 2023, the power cables have remained on our balance sheet, as we believed we were purchasing them.

22. The Termination Agreement is completely silent on these power cables.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

23. Because these cables were physically integrated into the facility's power docks at the time of the BASA, we believed they had been transferred as facility infrastructure rather than remaining the private property of Plaintiff.

24. In 2025, Mr. Jorgensen wrote that he “assume[d]” that “the spart parts we have on site (hash boards, PSUs, *power cables* etc.) will be packed in the same proper and diligent way.” **Ex. A** (emphasis added).

25. As far as I am aware, nobody from Defendant ever responded to that assumption, which was not a part of the executed Termination Agreement.

26. Therefore, there should be discovery as to the parties’ respective positions regarding their potential ownership of the power cables.

[Signature Page to Follow]



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 1st day of JANUARY, 2026 at London United Kingdom

s/ [signature]

Name NICHOLAS LAURLEN



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900